UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*FILED*

JUL 0 1 2008
RONALD 7-1-2008
UNITED STATES DISTRICT COURT
A. GUZMAN, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 694-1 |
| v. | ) | |
| | ) | Judge Ronald A. Guzman |
| ARTUR FLASZ | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ARTUR FLASZ, and his attorneys, GEORGE E. BECKER and THOMAS J. RUBBONE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth below.   The parties to this Agreement have agreed upon the following:

### Charges in this Case

2.     The indictment in this case charges defendant with one count of wire fraud, in violation of Title 18, United States Code, Section 1343 (Count One), and four counts of bank fraud, in violation of Title 18, United States Code, Section 1344 (Counts Three through Six).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorneys.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of funds, as described elsewhere in this Plea Agreement:

During the period of the scheme alleged in the indictment:

(a)    BMW Bank of North America, Delaware Place Bank, Eaglemark Savings Bank, Fifth Third Bank, JP Morgan Chase Bank, and National City Bank were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

(b)    First Franklin Financial Corporation, a subsidiary of National City Bank, was an originator of residential mortgage loans.

(c)    Wells Fargo Auto Finance, a division of Wells Fargo, was an automobile finance company.

Beginning in or about April 2006 and continuing until on or about October 25, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

2

defendant, together with co-defendant Adam Bojda and certain mortgage brokers, a real estate broker, and others, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme affected financial institutions. More specifically, defendant, Bojda, and their co-schemers schemed to defraud BMW Bank of North America, Delaware Place Bank, Eaglemark Savings Bank, Fifth Third Bank, First Franklin Financial Corporation, JP Morgan Chase Bank, National City Bank, Wells Fargo Auto Finance, and other lending institutions (hereinafter referred to collectively as "lenders"), so that they could acquire property and vehicles, as described below.

Defendant and Bojda recruited individuals ("straw buyers") to purchase property and vehicles for their (defendant and Bojda's) personal use and for the use of their co-schemers. Defendant and Bojda referred or brought straw buyers to certain mortgage brokers and automobile dealers where they could obtain financing for the purchase of property and vehicles. The mortgage brokers and automobile dealers prepared fraudulent mortgage loan and consumer credit applications. Defendant, Bojda, and their co-schemers caused straw buyers to sign the fraudulent mortgage loan and consumer credit applications. Those loan applications were fraudulent in that they falsified the straw buyers' places of employment and earnings, among other things, so that the straw buyers would appear to be qualified for the requested loans, when in fact, as defendant, Bojda, and their co-schemers well knew, the straw buyers were not qualified for the loans, could not afford to repay the loans, had no intention of repaying

3

the loans, and did not intend to own the property and vehicles. As defendant, Bojda, and their co-schemers also knew, lenders would rely on those fraudulent loan applications in approving loans to finance the straw buyers' purchases of property and vehicles.

Defendant, Bojda, and their co-schemers took possession of, and exercised control over, property and vehicles purchased by straw buyers. Among the vehicles obtained and controlled by defendant, Bojda, and their co-schemers during the course of the scheme and thus foreseeable to defendant were automobiles manufactured by Audi, BMW, Lexus, Mercedes-Benz, and Porsche, including the following:

- 2007 Audi Q7 (VIN: WA1BV74L97D048732);
- 2007 Audi Q7 (VIN: WA1BV74L87D062606);
- 2007 Audi Q7 (VIN: WA1BY74L37D066814);
- 2003 BMW 325i (VIN: WBAET37403NJ36608);
- 2004 BMW M3 (VIN: WBSBL93424PN56786);
- 2004 BMW 745Li (VIN: WBAGN63424DS49817);
- 2005 BMW 525i (VIN: WBANA53585B862298);
- 2006 BMW 750Li (VIN: WBAHN83586DT30154);
- 2003 Lexus GX470 (VIN: JTJBT20X230009938);
- 2001 Mercedes-Benz S55 (VIN: WDBNG73J51A172016);
- 2001 Mercedes-Benz S500 (VIN: WDBNG75J11A178814);
- 2002 Mercedes-Benz CL500 (VIN: WDBPJ7542A025565);
- 2003 Mercedes-Benz SL500R (VIN: WDBSK75F53F019104);
- 2004 Mercedes-Benz E500 (VIN: WDBUF83J14X146471);
- 2004 Mercedes-Benz S55 (VIN: WDBNG74J24A396086);
- 2005 Mercedes-Benz ML350 (VIN: 4JGAB57EX5A545410);
- 2007 Mercedes-Benz S550 (VIN: WDDNG71X47A066955);
- 2007 Mercedes-Benz S550 (VIN: WDDNG71X47A016850);
- 2005 Porsche Cayenne (VIN: WP1AB29P75LA63532);
- 2005 Porsche Cayenne (VIN: WP1AB29P45LA62807); and
- 2006 Porsche Cayenne (VIN: WP1AB29P96LA70869).

Among the properties obtained and controlled by defendant, Bojda, and their co-schemers during the course of the scheme were the following:

4

- 1801 Elm Street, Park Ridge, Illinois;
- 7757 West Forest Preserve Avenue, Chicago, Illinois;
- 1899 Weeg Way, Park Ridge, Illinois;
- 7928 North Oconto Avenue, Niles, Illinois; and
- 5357 North Lynch Avenue, Chicago, Illinois;

During the course of the scheme, defendant and Bojda provided fraudulently-obtained vehicles to an individual to ship the vehicles overseas for them. Defendant also provided this individual with blank vehicle titles to facilitate the exportation of fraudulently-obtained vehicles.

For the purpose of executing the above-described scheme, on or about June 15, 2006, defendant and Bojda knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a funds transfer in the amount of approximately $527,565 from National City Bank of Indiana, Indianapolis, Indiana, to JP Morgan Chase Bank, Chicago, Illinois, for credit to the account of First American Title Insurance Company, which funds transfer represented the proceeds of a mortgage loan for the purchase of the property located at 1801 Elm Street, Park Ridge, Illinois.

During the course of the scheme, lenders issued loans and financed the purchase of property and vehicles worth millions of dollars. Lenders incurred losses because their loans were not repaid. As of the execution of this agreement, the total actual loss occurred as a result of the fraudulent mortgages loans obtained on 1801 Elm Street, 7757 West Forest Preserve Avenue, and 5357 North Lynch is approximately $519,926. The total loss from unrecovered fraudulently obtained vehicles foreseeable to the defendant is approximately $330,000. Thus the total amount of the loss

attributable to the acts of defendant, Bojda, and their co-schemers and thus foreseeable to defendant is over $400,000, but not more than $2,500,000.

7.    The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum term of imprisonment of 30 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater. Defendant further understands that the Court also may impose a term of supervised release of not more than five years.

b.    Defendant further understands that the Court must order restitution to the victims of the offense, in an amount determined by the Court.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty or restitution order imposed by the Court.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines.**    The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2007 Guidelines Manual.

b.     **Offense Level Calculations.**

i.     The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii.     The total amount of the loss caused by or foreseeable to the defendant is over $400,000, but not more than $2,500,000. The base offense level should be increased by either 14 or 16 levels under Guideline § 2B1.1(b)(1)(H) or (I) depending upon whether the amount of loss is less than or equal to $1,000,000 or is more than $1,000,000.

iii.     The offense level should be increased by an additional 2 levels under Guideline § 2B1.1(b)(2)(A)(i) because the offense involved more than 10 victims.

7

iv.     The offense level should be increased by an additional 2 levels under Guideline § 2B1.1(b)(10)(C)(i) because the offense involved the unauthorized use of a means of identification (namely, a fraudulent driver's license in the name of an individual, initials I.B., whose identity had been stolen) unlawfully to obtain another means of identification (namely, a mortgage loan for the purchase of the property located at 7928 North Oconto Avenue, Niles, Illinois).

v.      The offense level should be increased by an additional 3 levels under Guideline § 3B1.1(b) because defendant was a manager or supervisor of criminal activity that involved more than five participants.

vi.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution order that may be imposed in this case, a 2-level reduction in the offense level will be appropriate.

vii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is

8

entitled to a 2-level reduction for acceptance of responsibility, the government will move for an additional 1-level reduction in the offense level.

     c.    **Criminal History Category.**   With regard to determining defendant's criminal history points and criminal history category, based on the following, defendant's criminal history points equal 3 and defendant's criminal history category is II:

     i. On or about October 25, 2005, in the Circuit Court of Cook County, Illinois, defendant was convicted of aggravated unlawful use of a weapon and sentenced to 18 months of probation. That conviction results in 1 criminal history point under Guideline § 4A1.1(c), and an additional 2 criminal history points under Guideline § 4A1.1(d) because defendant committed the instant offense while under the term of probation imposed in that case.

     ii. Defendant is currently under indictment in the Circuit Court of Cook County (07 CR 10848) on state charges based upon conduct that was part of the instant offense and therefore defendant will receive no criminal history points for any conviction resulting from 07 CR 10848. Guideline § 4A1.2 Note 1.

     d.    **Anticipated Advisory Sentencing Guidelines Range.** Based on the facts now known to the government, the anticipated offense level total is either a 25 or 27 (depending upon the final loss amount), which, when combined with the anticipated criminal history category of II, results in an anticipated advisory Sentencing Guidelines range of 70 to 78 or 78 to 97 months of imprisonment, in

addition to any term of supervised release, fine, forfeiture and restitution order that the Court may impose.

e.     Defendant and his attorneys and the government acknowledge that the above Sentencing Guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculations. Accordingly, the validity of this Agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that while none of the Sentencing Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain components of those calculations — specifically, those set forth above in subparagraphs (a) and (b) of this paragraph — are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.     Defendant understands that with the exception of the Sentencing Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is

10

entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees that he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pretrial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the Court the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Plea Agreement, then the government shall request the Court to impose a sentence below the advisory Sentencing Guidelines range pursuant to Guideline § 5K1.1 and to impose

the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to impose a sentence below the advisory Sentencing Guidelines range rests solely with the Court.

13. If the government requests the Court, pursuant to Sentencing Guideline § 5K1.1, to impose a sentence below the advisory Guidelines range, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons equal to 66 percent of the low end of advisory Sentencing Guidelines range which sentence shall be served concurrently with any sentence imposed on defendant by the Circuit Court of Cook County in 07 CR 10848. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth above, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth above, thereby rejecting this Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Plea Agreement.

14. If the government does not request the Court to impose a sentence below the advisory Sentencing Guideline range pursuant to Guideline § 5K1.1, as set forth above, this Plea Agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this Plea Agreement will

be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a), as well as the Sentencing Guidelines, without any reduction for cooperation pursuant to Guideline § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

15.   Regarding restitution, the parties acknowledge that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendant, to make full restitution to the victims of the offense, in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16.   Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.   After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

## Forfeiture

18.   The indictment charges that defendant and co-defendant Bojda are liable to the United States for the sum of $2,000,000, which funds are subject to forfeiture because those funds constitute, and were derived from, proceeds obtained directly and indirectly as the result of the offenses alleged in Counts One through Seven of the

indictment.    By entry of a guilty plea to Count One (wire fraud), defendant acknowledges that the funds identified above are subject to forfeiture.

19.    Defendant agrees to the entry of a forfeiture judgment in the amount of $1,500,000, in that such funds are subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further agrees to the seizure of such funds so that such funds may be disposed of according to law.

20.    Defendant understands that the government may satisfy the forfeiture judgment with substitute assets pursuant to Title 21, United States Code, Section 853(p) (as incorporated by Title 18, United States Code, Section 982(b)(1)). Any attempt on the part of defendant to transfer, convey, or otherwise conceal property prior to the satisfaction of the forfeiture judgment shall be deemed to violate this Plea Agreement. If such conveyances are discovered prior to the imposition of sentence, defendant understands that the government will oppose any reduction in his offense level for acceptance of responsibility.

21.    The parties agree that any payments made towards the satisfaction of the forfeiture judgment shall be credited to defendant's restitution obligation, and if any funds or property have been ordered forfeit, upon the repatriation of those funds and property to the victims of the offense, the restitution order shall be reduced accordingly. Defendant understands that the forfeiture of any funds or property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty that the Court may impose upon defendant in addition to the forfeiture judgment.

14

## Presentence Investigation Report/Post-Sentence Supervision

22.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

24.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed

15

subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

25.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case no. 07 CR 694-1.

26.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

27.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

16

a.   **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.   The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.   If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.   If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

17

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorneys would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

   b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed.  Acknowledging this, if the government requests the Court to impose a sentence below the advisory Sentencing Guidelines range pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pretrial rulings by the Court, and any part of the sentence (or the manner in which that

sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

      c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorneys have explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

28.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

29.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.    Defendant and his attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

32.   Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorneys. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:  7/1/08

PATRICK J. FITZGERALD
United States Attorney

ARTUR FLASZ
Defendant

BRIAN P. NETOLS
Assistant United States Attorney

GEORGE E. BECKER
Attorney for Defendant

THOMAS J. RUBBONE
Attorney for Defendant

21